(Decided 15th June, 1876.)

---

JOHN W. MARTIN *vs.* MUTUAL FIRE INSURANCE COMPANY OF MONTGOMERY COUNTY.

*Question of liability under a Policy of Fire insurance for loss by fire occasioned by sparks from a Steam Threshing Machine— Effect of a Resolution passed by the Company but not Communicated to the Insurer.*

The plaintiff sued an insurance company upon a policy of fire insurance issued by the latter, to recover for the loss of a barn, and sheds, and corn house, destroyed by fire caused by sparks from a steam threshing machine used by the plaintiff's tenant in threshing wheat. The policy was issued in 1859, and kept up by renewals till July, 1874, when the fire occurred. At the time it was issued, as well as at the times of the several renewals, the defendant knew the buildings were in the possession and occupancy of a tenant. By the policy it was provided, that "the company shall not be liable to pay for any loss or damage by fire happening in consequence of an invasion, civil commotion, * * * * * * * * or from any locomotive engine or engines." And also that "in case of any material increase of risk to the property insured, such increase of risk must be notified to the company and written permission therefor obtained. All material alterations and additions to buildings, a change of ownership, change of business, or occupant, or the act of renting or vacating the property occupied by the owner when insured shall vitiate the policy issued on the same, unless such alteration or

change shall be first notified to the board of directors in writing." The case was tried upon an agreement of facts in which it was admitted that "on the 18th of July, 1874, the said barn, and sheds, and corn house were destroyed by fire which was *communicated to the said buildings* by sparks from a steam threshing machine used *on the* premises by a tenant for the purpose of threshing out a crop of wheat." HELD:

That there was no evidence of a violation of any condition of the policy by the assured, as the agreement of facts contained no statement that the assured himself used the engine either in or near to the insured buildings, or even authorized or assented to such use of it, or even that the tenant introduced the engine *into* the barn or corn house or *under* the sheds, and used it there for the purpose of threshing his wheat.

Whether a different result would follow if the statement of facts showed that the tenant had actually introduced this steam engine *into* the insured buildings and there used it, *Quære?*

A resolution of the board of directors of the insurance company prohibiting the use of such machines within two hundred yards of insured property upon certain qualifications, passed subsequent to the issuance of the policy to the plaintiff, not communicated to him, and of which he had no notice or knowledge, could not affect his rights under the policy.

APPEAL from the Circuit Court for Montgomery County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ALVEY, J.

*J. Frank Bateman* and *Philip F. Thomas,* for the appellant.

By a fair and liberal interpretation of the policy of insurance it was clearly the meaning of the appellee to insure the appellant against all loss by fire, caused by the act or acts of the tenant of the appellee, unaccompanied by fraud or design. The fact that the Company received one *per centum* more than the ordinary rate of insurance, on buildings in the occupancy of a tenant, will warrant no

other conclusion. Neither fraud nor design, either on the part of the tenant or the insured is charged. For the purpose of threshing out the crop of wheat, the tenant had carried a steam threshing machine on the premises, and the sparks flying from the smoke-stack had fallen on the buildings. A fire ensued, by which the barn, corn-house and sheds were destroyed. It was, therefore, the act or acts of the tenant that caused the loss, and the appellee by insuring at "*tenant rates,*" had expressly agreed to indemnify the appellant against loss by fire so originating.

Even in cases where no higher rates of insurance than the ordinary rates have been charged, the Courts have held that fires caused by the fault or negligence of the insured, or *his servants or agents*, are losses within the policy. *Md. Fire Ins. Co. vs. Whiteford, et al.*, 21 *Md.*, 219; *Columbia Insurance Company vs. Lawrence*, 10 *Peters*, 507; *Waters vs. Merchants Louisville Ins. Co.*, 11 *Peters*, 213; *May on Insurance and cases there cited, section* 408, *et sequitur; Allen vs. Mutual Fire Insurance Company*, 11 *Md.*, 111.

The appellee promised to make good all loss or damage within the limits of insurance, that should happen by fire, except any loss by fire "happening in consequence of an invasion, civil commotion, riot or any military or usurped power whatsoever, or from any locomotive engine or engines." These exceptions necessarily exclude others to to be implied, extending to the use of a steam threshing machine, in the ordinary course of business. A steam engine used for threshing purposes, is stationary, and therefore is not included in the term "locomotive engine." If the appellee had intended to restrain the appellant from the use of steam on his premises, it should have so provided in the terms of the policy of insurance, which were dictated by it. An insurer taking a risk upon farm buildings in the occupancy of a tenant, is presumed to know and to have contemplated all the casualties and incidents to which

the subject insured might be liable as such. The appellant, therefore, always had the right to use steam on his premises, and the use of it on the occasion in question was not a material increase of risk. *Washington Fire Ins. Co. vs. Davison and Symington,* 30 *Md.,* 91; *Md. Fire Ins. Co. vs. Whiteford,* 21 *Md.,* 219; *Columbia Ins. Co. vs. Lawrence,* 10 *Peters,* 507; *Waters vs. Merchants Louisville Ins. Co.,* 11 *Peters,* 213; *Insurance Company vs. Transportation Co.,* 12 *Wallace,* 194.

Steam threshing machines were in general use. It was a matter of public notoriety, and the company was bound to take notice of it; and the insured had a right to exercise the ordinary and necessary rights of ownership over his property, to thresh out his wheat in the most effective and in the cheapest manner, unless the use of the means he employed in so doing were expressly prohibited by the terms of the policy. *Jolly vs. Balt. Eq. Society,* 1 *H. & G.,* 295; *Allen vs. Mutual Fire Ins. Co.,* 2 *Md.,* 111, *and cases cited; Carter vs. Bolhm,* 1 *Smith's Leading Cases,* 834; *May on Insurance, secs.* 224, 225, 230, 239, 240, 241, *etc.*

The action of the Board of directors of the appellee, on the subject of steam insurance, did not affect the insured's rights under the policy of insurance. The appellant is not bound by any resolution affecting his contract or relation to the company, passed without his knowledge and consent. The company could not render null and void the policy of insurance, by quietly passing a resolution. *New England Mut. Fire Ins. Co. vs. Butler,* 34 *Me.,* 351; *Hamilton Mut. Ins. Co. vs. Hobart,* 11 *Gray,* 543; *Ins. Co. vs. Connor,* 17 *Penn. St.,* 136.

*Francis Miller* and *Charles Abert,* for the appellee.

It is the admittted fact that the loss was occasioned solely by the use of the steam thresher—a fact which demonstrates the materiality of the increase of risk. But for

this use no fire would have taken place, and the loss results from a risk not contemplated by either party, and not covered by the policy. *Reid vs. Gore District Ins. Co.*, 11 *Upper Canada*, (*Q. B.*,) 348.

"Independently of the stipulations of the policy, if there is any such change in the circumstances of the property, by reason of alterations, *or change of use*, as to increase the risk, and a fire is occasioned by the circumstances creating the increased risk, the insurer is not liable." *Flanders on Insurance*, 488, *and cases cited; Boatwright vs. Ætna Ins. Co.*, 1 *Strobh.*, 281.

The enumeration of certain specific risks for which the company should not be liable, to wit, "invasion, civil commotion, riot, &c.," did not by any implication render it liable for losses resulting from a violation of the eighth section of the "terms and conditions." *Boatwright vs. Ætna Ins. Co.*, 1 *Strobh.*, 281.

The plaintiff having accepted the policy with the provision that "in case of any material increase of risk to the property insured, such increase of risk must be notified to the company, and written permission therefor be obtained from the secretary," must be held to have undertaken that no such material increase of risk should be made without such notice and written permission. A breach of this undertaking therefore avoids the policy. *Flanders on Insurance*, 501; *Evans vs. Trimountain Mut. F. Ins. Co.*, 9 *Allen*, 329; *Mead vs. Northwestern Ins. Co.*, 3 *Seld.*, 530.

That such a material increase of risk will relieve the insured of all liability has been established by so many decisions that it is needless to accumulate references, except to show what has been held to be a "material increase of risk." *May on Insurance, sections* 218, 220, 221, 257; *Allen vs. Massasoit Ins. Co.*, 99 *Mass.*, 160.

Unless the consequences are restricted to the acts of particular persons, an alteration such as would work a forfeiture of the policy if made by the insured, is equally

fatal if made by a tenant without the knowledge or consent of the insured. That it is made by a tenant is no excuse if contrary to the covenants in the policy. The tenant's possession is the landlord's possession. The latter continues to be the party insured, and the covenants which he enters into remain whether he occupies personally or by tenant. *May on Insurance*, 245 ; *Diehl vs. Adams Co. Mut. Ins. Co.*, 8 *P. F. Smith*, 443 ; *Howell vs. Baltimore Equitable Society*, 16 *Md.*, 377 ; *Kelley vs. Worcester Mut. Fire Ins. Co.*, 97 *Mass.*, 284 ; *Hobby vs. Dada*, 17 *Barbour*, 114 ; *Appleby vs. Firemen's Fund Ins. Co.*, 45 *Barbour*, 454.

The resolution of the board of directors of July 18, 1872, did not annul or render void a policy, but to serve as a guide to the action of the board in such cases as mentioned. If fire occurred from unauthorized increase of risk, the 8th section of the "terms and conditions" would operate. If the assured assume the risk of using a steam thresher, and a destruction of his property should occur not occasioned by it, he might recover.

MILLER, J., delivered the opinion of the Court.

This case was submitted to the Court below upon an agreed statement of facts, upon which it was agreed the Court should enter a *pro forma* judgment in favor of the defendant, and from this judgment the plaintiff has appealed.

The suit is upon a policy of insurance dated and issued the 24th of December, 1859, by which the defendant insured the plaintiff against "all loss or damage by fire" to the property therein described, for the term of seven years. Among the property so described and insured and for the respective amounts stated, are "five hundred dollars on barn and sheds, (tenant) and seventy-five dollars on corn-house, (tenant.)" By renewals this policy was in force on the 18th of July, 1874, when the above buildings

were destroyed by fire. At the time it was issued, as well as at the time of the several renewals thereof, the defendant knew these buildings were in the possession and occupancy of a tenant, the defendant having insured the same at the usual rate for farm buildings and barns in the occupancy of tenants, which is seven per cent., whereas if the owner himself had occupied them, the rate would have been six per cent. The only conditions of insurance that need be stated are :

1st. That " the company shall not be liable to pay for any loss or damage by fire happening in consequence of an invasion, civil commotion, riot, or any military or usurped power whatever, or from any locomotive engine or engines."

2nd. "In case of any material increase of risk to the property insured, such increase of risk must be notified to the company, and written permission therefor obtained. All material alterations and additions to buildings, a change of ownership, change of business or occupant, or the act of renting or vacating the property occupied by the owner when insured, shall vitiate any policy issued on the same, unless such alteration or change shall be first notified to the Board of Directors in writing. Ashes shall not be kept nearer than twenty-five yards to insured buildings, unless in brick or stone ash houses."

In the agreement of facts it is stated that " on the 18th of July, 1874, the said barn and sheds and corn house were destroyed by fire which was *communicated* to said buildings, by sparks from a steam threshing machine used *on the premises* by a tenant for the purpose of threshing out the crop of wheat." And it is contended on the part of the company that the use of steam in threshing was not introduced into this State until long after this policy was issued, and the risk arising from so dangerous a method of getting out grain was not contemplated by either party when this insurance was effected, and is not

therefore a risk covered by the policy; that the use of a
steam thresher was a material increase of risk, which
avoids the policy under the conditions of insurance, and
independently of the stipulations of the policy, if there is
any such change in the circumstances of the property by
reason of alterations or change of use, as to increase the
risk, and a fire is occasioned by the circumstances creating
the increased risk, the insurer is not liable.   But whatever
weight this argument might have if addressed to a case
affording scope for its application, it cannot be applied to
the case before us.   The agreement of facts contains no
statement that the assured himself used this engine either
in or near to the insured buildings, or ever authorized or
assented to such use of it.   Nor does the statement go so
far as to say that even the tenant introduced the engine
*into* the barn or corn house, or *under* the sheds, and used it
there for the purpose of threshing his wheat.   As we
read this statement it means that the tenant placed the
boiler and engine which drove the thresher, not *in* the barn
or under the sheds, but outside of them and *on the prem-
ises* of which he was tenant, near to the buildings, and
used it there in the place, and in the way in which thresh-
ing is done by such machines.   It may have been an act
of carelessness on his part, in thus making and keeping up
a fire in this boiler sufficient to create steam enough to run
the machine, too near to buildings easily set on fire by
sparks, but it is negligence in no degree different from that
he would have been guilty of, if he had carelessly set on fire
a brush heap in the same dangerous proximity to the build-
ings.   It is by fires occasioned by carelessness of the same
description, that such farm buildings in the country are
usually destroyed, and the main purpose of the owner in
insuring them, is to protect himself against the conse-
quences of such carelessness on the part of his servants,
agents and tenants.   If their policies do not cover such
risks, there is little use in insuring these buildings, and
the owners might as well stand their own insurers of them,

and save the expense of insurance premiums.   It is con-
ceded, the exception as to "locomotive engines," does not
include a stationary engine like this.   Such being the case
as now presented by the statement of facts, according to
our understanding of it, there is not only no condition of
the policy, but no principle of insurance law, nor any deci-
sion we have been referred to or have found, that goes to
the extent of relieving this company from liability to the
insured owner of the buildings for the loss thus occasioned.
In deciding the case upon these facts, we do not wish to be
understood as intimating that a different result would fol-
low, if the statement of facts showed that the tenant had
actually introduced this steam engine into the insured
buildings, and there used it.   On that question we express
no opinion.

It also appears that in July, 1872, the Board of Direc-
tors of this company passed a resolution "that the use of
steam in threshing by any person or persons insured in
this company, within two hundred yards of the insured
property, shall suspend the policy of said person or persons
from the time of kindling the fire until twelve hours after
extinguishing it, unless it shall be clearly and satisfacto-
rily proved that the loss by fire did not originate from such
use of the steam engine."   But this resolution was never
communicated to the plaintiff, and he had no notice or
knowledge of it.   His policy had been issued long prior to
this period, and his rights under it could not be affected by
the resolution.   He is not bound by any resolution affecting
his contract with, or relation to the company, passed with-
out his knowledge and consent.   The company could not
render null and void this policy of insurance by quietly
passing a resolution of this character.

It follows from what we have said the *pro forma* judg-
ment must be reversed, and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 15th June, 1876.)